■ In the Matter of ZALMAN C. BERNSTEIN et al., Petitioners, v COMMISSIONER OF TAXATION AND FINANCE et al., Respondents. [606 NYS2d 445] —Mercure, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained personal income tax assessments imposed under Tax Law article 22.

By this CPLR article 78 proceeding, petitioners challenge a determination of respondent Tax Appeals Tribunal sustaining notices of deficiency of the Department of Taxation and Finance for personal income taxes due during the 1984 and 1985 tax years. For the tax year 1984, out of a total income of $13,405,710, petitioners* reported $11,244,954 as personal ser-

* All reported income was earned by petitioner Zalman C. Bernstein, chief executive officer, chief financial officer and chair of the board of directors of Sanford C. Bernstein & Company, Inc., a subchapter S corporation, which is a member of the New York Stock Exchange, Inc. and provides investment management and research services.

vice compensation, consisting of $4,638,517 received as salary and wages reported on form W-2 and $6,607,428 received as contingent compensation reported on schedule K-1. For the tax year 1985, out of a total income of $16,780,451, petitioners reported $13,859,373 as personal service compensation, consisting of $3,203,869 received as salary and wages reported on form W-2 and $10,677,800 received as contingent compensation reported on schedule K-1. The Department assessed additional income taxes upon the basis of its determination that the amounts reported on schedule K-1 were distributions of corporate earnings and not personal service income subject to maximum tax benefits under Tax Law former § 603-A.

Tax Law former § 603-A provided a tax benefit for "New York personal service income", defined as: "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered" (Tax Law former § 603-A [b] [1] [A], as amended by L 1981, ch 1043, § 7). The applicable regulations make it clear that New York personal service income was the same as Federal personal service income under Internal Revenue Code former § 1348 and was intended to cover compensation received for personal services actually rendered and not distributions of corporate profits (see, 20 NYCRR former 100.4 [c] [1], [2]). As such, we are benefited by a vast body of Federal case law interpreting Internal Revenue Code former § 1348 and § 162 (a) (1) (governing corporate deductions for ordinary and necessary expenses and containing the same limitation for income representing reasonable compensation for personal services actually rendered).

Here, as in most cases considering the issue of whether earnings qualify as personal service income for income tax purposes, the primary inquiry is whether the amount of the compensation is reasonable, taking into account such factors as: "the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with gross income and net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; [and] the salary policy of the [employer] as to all employees" (Owensby & Kritikos v Commissioner of

*Internal Revenue,* 819 F2d 1315, 1323, quoting *Mayson Mfg. Co. v Commissioner of Internal Revenue,* 178 F2d 115, 119).

The burden is on petitioners to demonstrate the reasonableness of the compensation, a pure question of fact to be determined from the circumstances of each case *(see, RTS Inv. Corp. v Commissioner of Internal Revenue,* 877 F2d 647, 650; *Rutter v Commissioner of Internal Revenue,* 853 F2d 1267, 1271; *Owensby & Kritikos v Commissioner of Internal Revenue, supra,* at 1323; *Schneider & Co. v Commissioner of Internal Revenue,* 500 F2d 148, 151, *cert denied* 420 US 908).

In our view, there was adequate record support for the Tribunal's conclusion that petitioners failed to sustain their burden of demonstrating that the schedule K-1 income of petitioner Zalman C. Bernstein (hereinafter Bernstein) constituted personal service income within the purview of Tax Law former § 603-A *(see, Executive Land Corp. v Chu,* 150 AD2d 7, 9, *appeal dismissed* 75 NY2d 946). Initially, it is undisputed that the compensation was contingent, based upon a percentage of the firm's profits. In the case where a corporation is controlled by the very employees to whom the compensation is paid, special scrutiny must be given to salaries based upon a contingent compensation agreement to insure that the payments constitute compensation for services rendered and not distributions of earnings *(see, Schneider & Co. v Commissioner of Internal Revenue, supra,* at 152). In 1984, the firm's primary shareholders were Bernstein (32,041 of 100,000 outstanding shares), Lewis Sanders (17,589 shares), Roger Hertog (11,464 shares) and Joe Greeley (5,211 shares). Those four and Stuart Nelson, the firm's chief counsel, served as directors. In 1985, the situation was essentially the same except Bernstein's shares decreased to 29,903, Sanders' shares increased to 19,-935 and Kevin Brine (2,084 shares) became a major shareholder and director. Considering that the board of directors owned a controlling interest in the corporation and that Bernstein served as chair of the board of directors, was by far the largest stockholder and was in charge of recruitment and retention of key employees, including the other board members, it cannot be said that Bernstein's compensation package was the product of arm's length negotiations *(see, supra; Reppel Steel & Supply Co. v Commissioner of Internal Revenue,* 35 Tax Ct Mem [CCH] 368).

Under the circumstances, the evidence presented by petitioners by no means compelled a finding that the compensation was reasonable. As properly found by the Tribunal, although Bernstein's contributions to the firm were substan-

tial, its success was also attributable in large part to other members of the firm receiving far less significant shares of the profits. Further, the Tribunal did not err in rejecting the opinion of petitioners' expert *(see, Rutter v Commissioner of Internal Revenue,* 853 F2d 1267, *supra).* As properly noted by the Tribunal, the comparison data presented by petitioners' expert was not sufficiently detailed to demonstrate that comparable Wall Street executives received even greater compensation for personal services than Bernstein. We also agree with the Tribunal's implicit conclusion that the expert's characterization of Bernstein's compensation as a reward "our society bestows upon outstanding entrepreneurial executives" actually supported a finding that the compensation constituted a distribution of profit.

Finally, there is no merit to the contentions that the Tribunal acted arbitrarily in refusing to consider any of the income reported by petitioners on schedule K-1 as personal service income and that this refusal is contrary to past advisory opinions issued by the Department. To the contrary, the Tribunal merely recognized that the burden was on petitioners to demonstrate at the hearing that the amounts reported on schedule K-1 constituted reasonable compensation for personal services rendered. We have considered and rejected petitioners' additional arguments.

Cardona, P. J., Mikoll, Crew III and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.